## Eysaman v. Small.

*(Supreme Court, General Term, Fourth Department.  July, 1891.)*

1. ACTION FOR WASTE—PROVINCE OF JURY.
    It is a question of fact as to what acts constitute waste, and a finding on such question will not be disturbed on conflicting evidence. *Jackson* v. *Brownson,* 7 Johns. 232, followed.

2. SAME—WAIVER OF JURY TRIAL.
    Where a jury is impaneled in an action for waste, and is afterwards discharged, and the cause tried by the court, without exception from plaintiff, it will be presumed that plaintiff waived her right to a trial by jury, Code Civil Proc. N. Y. § 968, providing that in such action "an issue of fact must be tried by a jury, unless a jury trial is waived."

3. APPEAL—HARMLESS ERROR—EXCLUSION OF EVIDENCE.
    Error cannot be predicated on the exclusion of testimony, where it appears that the substance of such testimony was afterwards admitted.

Appeal from circuit court, Herkimer county.

Action for waste by Adam H. Eysaman, as guardian of Lulu Eysaman, an infant, against Mary Small.   On the 25th day of June, 1887, John Small died at his residence in German Flatts, seised in fee of the premises described in the complaint, leaving the defendant, his widow, him surviving, and an adopted daughter, the wife of Adam H. Eysaman, the said Adam and the said wife being the parents of the said Lulu Eysaman.   The will of John Small was admitted to probate on the 27th of September, 1887, in Herkimer county, and in the will the premises were devised to the defendant for life, with a remainder in fee to Lulu Eysaman.   The premises consist of about three acres of land, dwelling-house, smoke-house, and carriage-house thereon, which were occupied by the deceased as his residence for many years before his death, and his wife, the defendant, and his adopted daughter.   The defendant remained in possession of the premises under her husband's will, and has occupied them since his death.   Lulu and her parents occupied the same premises with the defendant from the time of the death down to the 4th of June, 1889.   The deceased was about 84 years of age at the time of his death, and the defendant about 70, and Lulu about 4 years old, and her father was appointed her guardian on the 7th of October, 1889.   No income had been received by the defendant from the property, and the only advantage she has derived therefrom has been the occupation of the same for a residence, and the use of the land for grass and hay and vegetables for her own use.   At the time of the decease of her husband the premises were old and in some respects out of repair; there were some slate on the roof broken and some gone; some shingles gone; the sills of the veranda somewhat decayed, and other sills more or less rotten; "but their condition was not such as to interfere with the comfortable use of the same for the purposes for which they were used by the deceased, or to require immediate repair to preserve the buildings."   The court found "the condition of the buildings, in the respects referred to in the last finding, continued from the death of John Small to the time of the commencement of this action, in November, 1889, and thence to the present time, and the buildings are now in a state of repair and condition for use and preservation substantially the same as they were when John Small died, and when the estate of the defendant and of Lulu Eysaman, the ward of the plaintiff, vested and took effect under the will.   Before the commencement of this action, and after his appointment as guardian as aforesaid, the plaintiff demanded of the defendant that she repair the buildings on the premises above referred to.   No such repairs were made or commenced before the commencement of this action, nor have they since been begun or made."   The plaintiff requested the court to find, viz.: "Since the said defendant has had the occupation, use, benefit, and control of said premises and buildings, she has suffered the buildings on said premises to become or to remain ruinous, dilapi

dated, and out of repair in the respects and to the extent charged in the complaint." The court did not so find, and the plaintiff took an exception thereto. The plaintiff also requested the court to find "that said buildings, in order to their proper and reasonable reparation, and to prevent further and increasing decay and injury thereto, require the expenditure of the sum of $192.00." The request was not found, and the plaintiff took an exception. The plaintiff also requested the court to find: "The proper and reasonable reparation of the dwelling-house, and of a stone building appurtenant thereto, used as an ash-house, requires the expenditure of at least $42.50 or more to put them in proper condition, and to prevent and arrest further decay and injury to said buildings." The court did not so find, and the plaintiff took an exception. The court was also requested to find: "The said defendant, before the commencement of this action, refused to make any repairs to said buildings, or any of them." The court did not so find, and the plaintiff took an exception. The court found as a matter of law, viz.: "The said defendant, as life-tenant of said premises, is bound to make reasonable repairs to said buildings to prevent further waste thereof and injury thereto." A request was made by the plaintiff, viz.: "The plaintiff is entitled to judgment that defendant, within a reasonable time, make repairs to said buildings so as to put them in reasonable and proper condition to arrest injury and decay thereof;" which request was not found, and the plaintiff took an exception thereto. From a judgment entered on a decision of the court dismissing the complaint plaintiff appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*George W. Smith,* for appellant. *Devendorf & Smith,* for respondent.

HARDIN, P. J. Appellant does not claim what is known in law as "voluntary waste," but, on the contrary, does claim what is commonly denominated "permissive waste." Mr. Washburn, in his work on Real Property, (volume 1, p. 126,) says: "To suffer it [house] to go to decay for want of necessary repair is permissive;" and he adds: "But whatever the act or omission is, in order to its constituting waste, it must either diminish the value of the estate, or increase the burdens upon it, or impair the evidence of title of him who has the inheritance. ‘Waste,’ in short, may be defined to be whatever does a lasting damage to the freehold or inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance." And he further adds: "It often becomes a question for a jury to determine whether a certain act be or be not waste, without referring to a criterion drawn from any other country. The rule as to what constitutes waste is uniform. Its application depends upon the condition and usages of the place where it is to be made." And the same author, at page 134, (2d Ed.) says: "Though a tenant is clearly liable if he permits a house or fences on the premises to go to decay, when by the exercise of reasonable diligence he might prevent it, it is not easy to lay down rules *a priori* to define when and how far a tenant shall act in all cases. Decay is often so gradual that it is difficult to determine when a tenant is bound to repair, or how far he shall go in making repairs in any given case." In *Jackson* v. *Tibbits,* 3 Wend. 341, MARCY, J., said: "The very term ‘waste’ implies the idea of detriment to the landlord or reversioner. * * * Without damage, it would seem there could be no waste; indeed, Blackstone defines ‘waste’ to be whatever does a lasting damage to the freehold or inheritance. 2 Bl. Comm. 281." In *Jackson* v. *Brownson,* 7 Johns. 232, VAN NESS, J., says: "It is a general principle that the law considers everything to be waste which does a permanent injury to the inheritance;" and in that case it was held that what acts would constitute waste is usually a question of fact for a jury to decide.

In the appeal-book before us we find a great conflict in the evidence upon the important questions of fact involved in the findings and refusals to find.

In the points of the learned counsel for the appellant we find clear, caustic, and resolute criticisms of the testimony given in behalf of the defendant, and clear and persuasive comments upon the testimony given in behalf of the plaintiff, and perhaps, if the question was *res novo*, we might reach the conclusion evolved and earnestly asserted by the learned counsel for the appellant. However, after a perusal of the evidence, and giving to the findings made by the trial judge such influence as we think they should receive from our hands, inasmuch as he saw and heard the witnesses, and could thus well judge of the weight and credence to be given to the testimony unusually conflicting, we are constrained to regard it as our duty to adopt the findings made by the trial judge upon the vital questions of fact; nor are we prepared to say that he improperly refused to find in pursuance to the requests made by the plaintiff. The requests thus refused embraced, as matters of fact, subjects upon which the testimony was conflicting.

2. We have looked at the rulings made upon the trial, and we find no such error as we think calls for a reversal of the judgment. Plaintiff put a question to one of the witnesses calling for the valuation of the dwelling-house. Thereafter the counsel for the plaintiff stated that the "idea of the testimony was to get the relative amount of repairs taken in connection with the entire value of the property." Thereupon the court remarked: "That has nothing to do with the question at all." Thereupon an exception was taken, and subsequently the question was propounded to the witness, viz.: "What, in your opinion, would that building be worth now, if it were put in proper repair?" This question was objected to as incompetent, and not the proper measure of damages, and the objections were sustained, and the plaintiff's counsel took an exception. In considering these rulings, it must be borne in mind that the case presents a very full and accurate description of the property,—of its condition as found by several witnesses on the part of the plaintiff, as well as its condition as found by several witnesses on the part of the defendant; and photographs of the buildings were also produced in evidence; and it is not apparent that the questions which were ruled upon by the court would have, if answered, influenced the result. In substance, the evidence sought for appears in the appeal-book. See section 1003, Code Civil Proc. Nor do we think that the circumstance that the witnesses were permitted to say that a barn was built on the farm 10 or 15 years before was prejudicial to the plaintiff or influenced the findings made by the trial judge. Nor do we think it was error to receive evidence that the premises yielded no money income to the defendant, and that the advantages which she derived from the occupation were such as ensued from the use of the house and receiving the produce of the land, under the circumstances disclosed by the evidence. The vital question, upon the whole evidence, seems to have been whether the property was suffering lasting injury or permanent injury by the omission of the defendant to make expenditures thereon. Upon all the evidence, the trial judge seems to have reached the conclusion that the case was not brought within the principles of law to which we have already adverted.

3. It is suggested in behalf of the appellant that "the trial judge misapprehended the scope of the complaint in holding that only equitable relief was sought. The court, after a jury was impaneled and the case was partly tried, discharged the jury." At the commencement of the case and exceptions we find it stated, viz.: "Case opened to the jury in behalf of the plaintiff;" also that "one of the jurors called upon the panel," etc. At folio 800 it appears inferentially that the jury had been discharged. The defendant's counsel seems to to have, at that stage of the case, stated an objection and exception, and he further observed: "I would like to have it appear that it was duly objected to, and a request made to go to the jury generally, and an exception generally;" and after some further remarks by the defendant's counsel it appears the court observed: "The case never should have been placed upon the jury calendar;"

and thereupon the defendant took an exception, but, as the defendant has not appealed, his exception is unavailing. We have looked in vain through the appeal-book to find any exception taken by the plaintiff to the action of the court in discharging the jury and continuing the trial without a jury. We therefore are unable to discover any exception upon which the plaintiff can successfully allege error in the court in discharging the jury, and continuing the trial without a jury, under the supposition that the case was one in equity. It is provided in section 1651 of the Code of Civil Procedure that "an action for waste lies against a tenant by the curtesy, in dower, for life, or for years, or the assignee of such a tenant, who, during his estate or term, commits waste upon the real property held by him." And in section 968 of the Code it is provided that, in an action for waste, "an issue of fact must be tried by a jury, unless a jury trial is waived." *Kennagh* v. *McColgan*, 6 N. Y. Supp. 244. Apparently the plaintiff acquiesced in the action of the circuit in discharging the jury, and, as we find no exception to the ruling in that respect, we must assume that such acquiescence is equivalent to a waiver by the plaintiff of his right to have the issue of fact tried by a jury. We think the decision of the circuit should stand. Judgment affirmed, with costs. All concur.